Medina v. Napoli Mr. King, good morning. Good morning, your honors. Kevin King, appointed counsel for the appellant. The podium, I think, comes up a little bit with a button on the left there, if that's helpful to you. That may be as far as it goes. Seems to be. So, as I was saying, Kevin King appointed counsel for appellant Anthony Medina. This is a Section 1983 action involving allegations that the defendants, corrections officers, at New York's Southport Correctional Facility deprived Mr. Medina of food on multiple occasions. The district court granted defendants summary judgment holding that Mr. Medina failed to exhaust his administrative grievances. This court should vacate the judgment and remand for further proceedings because there are genuine factual disputes about which administrative remedies were available to Mr. Medina and whether he exhausted them. And on that score, this court's 2016 ruling in Williams, the case cited throughout our brief, is dispositive. Williams held that New York's procedures for unfiled and unanswered grievances, like Mr. Medina's here, are so opaque that no inmate, no inmate, not Mr. Medina, not anybody else, could use them. But that argument relates to the June grievance, right? Not to the December grievance because everybody agrees it was filed. People saw it. People responded to it. It's correct. It's missed grievance. It goes to the grievance in the ether. That's right. The Williams point about unfiled and unanswered would apply to the June 2007. But your position is that this is on all four with Williams as to the June grievance. We should simply follow Williams and we should reverse the judgment. That's absolutely right. This case as to the June claim is a replay of Williams in every respect. What about December? So as to December, what you've got, the factual predicate for the claim is that Mr. Medina had filed this lawsuit in July, end of July, I think July 30, 2007. One of the officers that's a defendant in this case, Officer Gilbert, was served with a complaint somewhere around I think November 30th, the very end of November 2007. And less than two weeks after that, he sees Medina. He's the individual who's charged with rolling the food cart around. This is a maximum security prison. The inmates don't eat in a cafeteria. They eat in their cells. The food has to be delivered to them by the corrections officers. And so Officer Gilbert is there. And he sees Medina and he says, let me help you out with your lawsuit. Add this to it. And then he fails to feed him, fails to give him a meal, rolls the cart right on by. So that's the factual predicate for the claim. The way it worked as far as exhaustion is that Medina filed a grievance, a written grievance, I think the same day or the next day. That grievance was neither filed nor answered. But Medina persevered. He filed a second grievance the next day, a written grievance, and also complained, I believe, to the superintendent at Southport. The second of those two grievances was docketed and processed. It was received by the grievance committee at Southport. The grievance committee dismissed it. And that's different than a denial, as we try and show in our brief. They dismissed it, saying, well, you needed to confer with the block supervisor. Okay. Confirm something for me. I have a lot of questions for the attorney general, but confirm something for me. At no point in the dock grievance procedure do the words block sergeant appear. So far as I'm aware, those two words don't appear anywhere. And I would add, in addition to that, that there's another thing that the regulations do say that's important. And this is at page four of the statutory and regulatory addendum, ADD4. It says that a facility may not impose preconditions. So I think that reinforces the point. It doesn't say that there's anything. It says that inmates are encouraged, not that they're required to use alternative means of resolution. Does it not? Yes, Your Honor. I believe that's the case. And all the thesaurus in which encourage and require are synonymous? No, Your Honor, I do not. And, in fact, I think as we note in our reply, there are a number of things that the regulations say an inmate must do. As to the December claim, Mr. Medina did all of those things. There are some things they say they're encouraged to do or may do. Why should we send it back because there are factual disputes? Isn't it really your position that he exhausted in December? He did everything he had to do in December, and so now he can proceed with his lawsuit? Isn't that your position? Yes, Your Honor, it's our position that he did everything he needs to do. But I do want to recognize that the defendants dispute some of these factual predicates, right? They dispute that he did some of these things. I think most of those disputes pertain to June rather than December. They do tend to pertain to June, do they not? I agree that they do. I don't think there's any dispute. Where's the factual dispute about December, about the second grievance, the one that was docketed, the one that was dismissed? Well, I'll let my colleague speak for himself. I'm not aware of a factual dispute there as far as the two things that we think require. The regulation does provide the 7015B41A. The grievant may appeal a dismissal to the IGP supervisor within seven days, and he must respond within seven days. And if he disagrees with the dismissal, it's returned to the IGRC for a formal decision. If he does not reinstate it, the grievant may pursue a complaint to the IGP supervisor that the IGP supervisor failed to reinstate. So it expressly provides that on failure to achieve what he sought to achieve, the regulation gives him another thing that he may do. But that thing leads to, it seems to me, an endless round of every time you don't get what you want, you have another procedure that you may exhaust, which is making a new complaint of the failure to reinstate the old one. And so you can do that until they lay you in the grave. Precisely so, Your Honor. And I think footnote four from the Williams case actually gets into this a little bit and says, this process of filing a collateral grievance is so opaque that no one really could make use of it. So I think we would agree that to the extent that option, if you filed your complaint, it's been dismissed, and the dismissal has been affirmed by the supervisor, that process that appears to be optional, it says may, but to the extent that's a process that's out there, it's not available. Exhaustion, does exhaustion cover only things that are put in the mandatory, that you must, or things that are available to you? I believe proper exhaustion is the watchword. That's from the Supreme Court's Woodford decision, and that means exhausting every process that's required of you. I'm not aware of a case that gets into may versus must, but it is telling that the IGP regulations throughout use the word must for the three steps that they've got, said you must file a written grievance, you must file an appeal. But the language that you've just referred to, Your Honor, is may. And in any event, even if that may process were considered to be part of proper exhaustion, for the reasons given in Williams in footnote four and for the reasons given in our brief, it wasn't available, in fact, to Mr. Medina here. The only other point I'd want to stress is that this was a maximum security setting. It wasn't available to Mr. Williams here because? It was not available here, so with respect to the December claim, because it's an infinite loop, right, for the reason that you gave. He would file a collateral grievance. Collateral grievance wasn't about the deprivation of food. The collateral grievance would have been about the failure to deal with the first grievance, right? That's correct, Your Honor, yes. And so it's not clear, as Williams notes in footnote four, what he could have got out of that, and it would have gone on endlessly if his view is I did what I was required to do and their view is you didn't. I see that my red light is on. Thank you, Mr. King. You've reserved two minutes for rebuttal. Mr. Brody? Mr. Brody? Good afternoon. Good morning, Your Honor. Let me go right to the issue of whether there is an infinite loop. The collateral grievance would allege that the grievance program supervisor failed? I want to go back to the beginning. Okay. All right, we'll go back. In every case like this that I have been involved in in the district court, which is thousands of them, DOCS takes the position that you read the grievance procedure literally, that the prisoner complies literally with the grievance procedure, right? I can't speak to those thousands of cases. I think literal compliance is a good idea. DOCS takes the position that literal compliance is what you do. You read what's on the page, you do what's on the page, and you don't skip any steps, right? I think literal compliance is a safe thing to do. Okay. So the grievance policy says inmates are encouraged to use alternatives. It doesn't say they're required to, right? The grievance policy — Now, this is a yes or no question, sir. It says that, but then it says something else. Yes. It says that a facility may not impose preconditions for the submission of a grievance, right? Yes, and then it says something else. Requiring someone to intuit that he has to seek out his block sergeant — the block sergeant's name nowhere appears in the document — imposes a precondition on the filing of a grievance by requiring him to do something that's not only not written down, but that he's only encouraged to do in the first place, right? No, it didn't, for two reasons. First of all, Medina filed his grievance. The grievance was in there. They didn't say, Mr. Medina, you can't file any grievances because we're imposing a new condition. He filed the grievance, and then — But there's a provision that in June he didn't file a grievance. I thought we were talking about December. December is the block sergeant, all right? In June, he makes a claim under Medina — I'm sorry, under Williams — that the grievance process wasn't available. Now, we say, based on his deposition testimony, that he claimed that the grievance process was available and he exhausted it, and he went all the way up to the cork. So we don't think that claim will fly, but if — but Mr. Medina concedes on appeal that there are disputed issues of fact. So if you get beyond his deposition testimony as to the June claim, there are at least disputed issues of fact, and that goes back for a MESA hearing. And we disagree with opposing counsel that it can be put off until the trial, because MESA itself tells the courts that exhaustion is a precondition. And your position is that because of what you perceive as an inconsistency between your view of the record and his testimony, that this doesn't just come under Williams? Williams doesn't dispose of it? Well, there are two claims. There's the June claim. I'm talking about June. He says June is a replay of Williams. Right. Well, Williams — and it's unfortunate, Your Honors, that Williams was decided on a motion to dismiss, because it might suggest that you can — that you could decide exhaustion just based on an inmate's allegation. Now, Williams recognized that they were under the motion-to-dismiss standard. They had to take the inmate's allegations as true. If, going back on remand, the defendants had asked for a MESA hearing and presented evidence that created a disputed issue of fact over exhaustion, then I believe that issue was still open in Williams. Certainly, this Court should hold that when there is a request for a MESA hearing and when there is a disputed issue of fact over whether remedies were available to the prisoner, then you go back for a MESA hearing, you have that preliminary hearing, and that's when you decide it, before anything else happens, just as MESA said. Now, let me get to December. December, this is the tail that wags the dog. One meal, he's deprived of lunch on a day. And then he files his grievance. He's not stopped from filing the grievance. And I'll quote you the full — It was a grievable offense, was it not? Yes. All right. Yeah. We're not — you're not demeaning what he complained about? No. I mean, I think the allegations in June are far more serious. I mean — I think it was more than one meal. In June, it was many — it was five days in June. It's a serious allegation. We're not demeaning that. December, he misses one meal, and he says that the officer was retaliating against him. And this goes to the basic policy of the regulations, that you're supposed to try to work things out. You miss one meal, you talk to the area supervisor, and you say, I missed a meal, and this guy was nasty to me, and he was retaliating. But your regulations don't say anything about the area supervisor, and they don't require you to use informal means. And they say specifically we can't set a precondition if it's a grievable offense. You can file a grievance. And he did file a grievance, and Your Honor used the word intuit before, and I think this is very important. They dismissed it because he didn't talk to the block sergeant. And that's why — look, I went to Harvard Law School, OK? I don't think Mr. Medina went to the Harvard Law School, but I went to Harvard Law School. I've read those regs. I couldn't figure out that you had to go to the block sergeant. Well, Your Honor, this is the important thing. The regs say, although a facility may not impose preconditions to submission of a grievance, the failure of an inmate to attempt to resolve a problem on his or her own may result in the dismissal and closing — That's a very contradictory statement, Mr. Brody. Well, no — If it may result in the dismissal, then it's the imposition of a condition. Well, no, Your Honor, because they told him exactly what he needed to do. They said, go back and talk to the block sergeant. So Medina could have, the next day after getting this dismissal, or any time thereafter, he could have — or before he was transferred, and he was there for a few days, and indeed he alleges that he filed another grievance in the interim time, he could have talked to the block sergeant and said, your guy has been retaliating against me. He deprived me of a meal on the 11th. And the block sergeant could have resolved it. They could have made a good-faith effort to resolve it by saying, okay, Corrections Officer Gilbert is not going to serve you any more meals. We're going to make sure of that. And maybe they couldn't have resolved it. If they didn't resolve it, all Mr. Medina had to do was write down, explain to the grievance process, I tried talking to the block sergeant. It was fruitless. Here's why. Now, what Mr. Medina actually — Isn't that laid out in the regs? It's not, is it? Well, the regs — Subsequent steps that sound perfectly reasonable, but they're add-ons to the procedure. You file a grievance and it will be processed. Well, you have a general procedure that's applicable to any number of specific circumstances. And what was absolutely appropriate here is that the grievance committee said, Mr. Medina, here's what you absolutely have to do in this specific circumstance. Talk to your block sergeant. If that doesn't work, come back to us. Why are they entitled to do that? Why are they entitled to impose this new condition? Well, in addition to the language I cited, 701.1b says that their grievance procedures are intended to supplement, not replace, informal problem resolution. 701.3a says they're encouraged to resolve complaints informally. So I understand that they're encouraged to resolve complaints informally, but the procedure specifically says we can't impose any precondition. If you don't want to do it informally, we can't impose any precondition on you. That requires you to do it informally. And you don't require them to do it informally, except you do, apparently, because the grievance gets dismissed if you don't try to informally resolve it. Well, it wasn't a precondition to — easier to understand set of procedures. If you want them to solve something informally, tell them the first thing you have to do is try to solve it informally. Not you may, but you must. Well, it is a discretionary matter. This is 701.5b41a. Discretionary, then you can't dismiss his grievance if he doesn't do it. It's discretionary with the committee to dismiss the grievance. But, again, they didn't block him from filing. After he filed, they said — The difference between blocking from filing and then subsequently ruling that the filing is of no consequence because you didn't do the thing that you were supposed to do before filing. Well, for one thing, reading the rule literally, it's okay to do that. And reading the rules in context with all of the references to informal dispute resolution, what it allows the committee to do is say, look, there's a very simple thing you could have done. You could have tried to resolve this with the block sergeant. Tell him what went wrong on his watch. And then, if it doesn't work, come back to us. We have your grievance. We're going to dismiss it for now. It was like a dismissal without prejudice. But Mr. Medina never talked to the block sergeant. That's on page 466 of the record. Thank you. Thank you, Your Honor. Thank you, Mr. Brown. Mr. Kagan, you have reserved two minutes for rebuttal. Yes, Your Honors, I'll be brief. Just four very quick points. Let me start with the last point that Your Honor was mentioning about DOCS being able to write a clear rule. Indeed, in Williams, this court said to DOCS that there's a way you can address this issue of unfiled and unanswered grievances, and that way is to amend your regulations. Indeed, DOCS has, since Williams, amended its regulations once, not in a way that deals with these issues but in another unrelated way. So far as I'm aware, there's nothing to stop DOCS from amending its regs to provide for these circumstances. It hasn't done that. It ought to bear the consequences. Second, as to June, it appears that there's agreement between the parties here that there are genuine issues of material fact that would preclude summary judgment. So the question is, it's got to go back to the district court, but, you know, what comes next? And as we point out in our brief, pages 13 to 17 of the reply, that's a question in the first instance for the district court. The district court has discretion to say we're going to hold a MESA hearing, as my colleague Mr. Brody says, or we're going to do this at trial or in some other way. That's for the district court in the first instance. Turning to December, I just point out that, as we note at 26 of our reply, formalities were not often followed at Southport, and that's another important layer here. You know, Medina did the best he could to comply with these confusing rules, but even when he did, sometimes the regs would say you've got to do X and X wouldn't work, so he'd do Y and Y miraculously would work. I think that's an important point. And then the other thing is that he was transferred at the end of December 2007. We don't know exactly when. The record doesn't disclose that point. But Williams had identified a transfer as a complicating factor, something that made the procedures unavailable in that case. And here, too, you have a transfer coming right on the heels of the December claim. So for all of these reasons, we'd urge that the case, that the judgment be vacated and the case remanded for further proceedings. Thank you, Your Honors. Thank you. Thank you both. We'll reserve decision. Mr. King, thank you for taking the assignment in this case.